## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

DENISE FITZPATRICK, *et al.*,      )
                                    )

Plaintiffs,                   )
                                    )

v.                               )
                                    )

CITY OF HOBART, *et al.*,       )       No. 2:03-CV-359 PS
                                    )

Defendants.                 )

## <u>MEMORANDUM OPINION AND ORDER</u>

In 2001 and 2002, two African-American families moved into a predominantly white neighborhood in Hobart, Indiana. Almost immediately upon their arrival, Denise Fitzpatrick and her children, and Ralph and Sandra Harris and their children, felt that they were harassed by the Hobart Police Department, the School City of Hobart, the Hobart Building Commission, and a neighborhood family (the Kundrats) based on the color of their skin. John Hanna, the owner of the house that was rented to the Fitzpatrick family, claims that he was harassed by defendants because he rented his property to an African-American family. According to Plaintiffs, they ultimately moved out of Hobart to escape the constant harassment of the defendants.

After being forced out of their homes, Plaintiffs filed the present action against the Kundrats, the School City of Hobart, the Hobart Building Commission, the City of Hobart, various City of Hobart government officials, the Hobart Police Department, and various Hobart police officers, seeking damages for the defendants' racially discriminatory actions and violations of a number of federal and state laws. The claims against the School City of Hobart were settled and are therefore no longer before the Court.

This matter is before the Court on a Motion for Summary Judgment brought by

Defendants City of Hobart; Hobart Police Department; Hobart Building Department; Linda M. Buzinec, in her official capacity as Mayor of the City of Hobart; Brian K. Snedecor, in his official capacity as Chief of the Hobart Police Department; Carroll Lewis, in his official capacity as the Hobart Building Commissioner; John Mitchell, Paul Oliver, Scott Blake, and Mike Stewart, in their official capacities as police officers with the Hobart Police Department (the "City Defendants"); and  Mayor Buzinec, Police Chief Snedecor, Building Commissioner Lewis and the four police officers, in their individual capacities.  As explained below, we grant summary judgment to the City Defendants and to Buzinec, Snedecor and Lewis in their individual capacities.  However, we deny summary judgment on the claims against the four police officers – Mitchell, Oliver, Blake and Stewart – brought in their individual capacities.

## BACKGROUND

While Plaintiffs have managed to clearly articulate the nature of their claims against the individual police officers, this Court is faced with the daunting task of deciphering the factual bases for the claims against the City Defendants which are murky at best.  Further complicating this Court's analysis of Plaintiffs' claims is the fact that in response to various defendants' separate motions for summary judgment, Plaintiffs filed a single "consolidated appendix" that did not separate out the factual basis for each of the Plaintiffs' claims against each defendant. Instead, Plaintiffs seem to allege that each and every defendant is liable to Plaintiffs, as a whole, for the allegedly discriminatory acts of the others.

Plaintiffs' 77-page consolidated appendix is really just a gathering of snippets from several depositions in the case.  The problem is that Plaintiffs made little effort in their brief to identify the specific evidence from the appendix that supports each of their claims.  Instead, they

apparently were content to impel the Court to review the record and root out any evidence necessary to defeat the Motions for Summary Judgment.  But this Court is not obligated to scour the record to perfect Plaintiffs' case at the summary judgment stage -- that burden falls on Plaintiffs, alone, and no one else.  *Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005); *see also Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995) (court not required to scour record to locate evidence supporting party's legal argument). With that in mind, the factual summary below represents this Court's best effort to pull evidence from the record and separate out those facts pertinent to the Defendants for purposes of this motion.

**A.      The Parties**

On December 28, 2001, Denise Fitzpatrick and her children, Sekiera Fitzpatrick, Nikieia Fitzpatrick, Cecil Fitzpatrick, Corey Fitzpatrick, Telieia Fitzpatrick, Jacinda Fitzpatrick, and Christina Fitzpatrick, moved into a rental property located at 522 Rush Street in Hobart, Indiana. John Hanna rented the 522 Rush Street property to the Fitzpatrick family under Section 8 – a federal government housing program.

On July 2, 2002, Ralph and Sandra Harris and their children, Ralph Harris, Jr., Robert Jemerson, Latasha Spencer, and Tonya Harris, moved into a rental property located at 521 Pershing Street in Hobart, Indiana.  The Harris property was located near the Fitzpatrick property and the children of both families became good friends.  The Fitzpatrick family and the Harris family, both of whom are African-American, lived in a predominately white neighborhood.

**B.      The Allegedly Discriminatory Acts**

The evidence in this case can best be summarized by separately discussing the several

encounters between the Plaintiffs and the various defendants in the case. Each of those encounters is described below.

1.   **Initial Encounter Between Plaintiffs and the Hobart Police**

On the day that the Harris family moved into the 521 Pershing Street property, a Hobart Police Department squad car stopped at the property, and several unidentified Hobart police officers demanded identification from the members of the Harris family.  The police officers informed the Harris family that the police had received a complaint of trespassing.  Once identification and a lease for the property were produced, the police officers left the Harris house.  The next day – July 3, 2002 – Robert Jemerson, Ralph Harris, and Cecil and Corey Fitzpatrick were walking to the store when a squad car pulled up next to the them and an unidentified police officer indicated that the police department would "be watching" the family.

2.   **School Incidents**

In January 2002, the Fitzpatrick children enrolled in the Hobart schools;  the Harris children enrolled in August 2002.  Once enrolled in school, the Fitzpatrick and Harris children claim to have suffered constant harassment from white students. While the majority of the incidents that occurred at the schools are not relevant to the City Defendants' motion for summary judgment, Plaintiffs' claims against Officer Mitchell, an employee of the City of Hobart, are relevant.

While employed with the City of Hobart police department, Officer Mitchell worked as the School Resource Officer at several of the School City of Hobart schools.  No evidence has been presented to this Court to establish whether Officer Mitchell, while working at the schools

in his capacity as a School Resource Officer, was directed or controlled by officials for the School City of Hobart.

   According to Plaintiffs, the Harris and Fitzpatrick children were constantly harassed at school, but when the children would stick up for themselves, they would be singled out and punished by Officer Mitchell.  On several occasions, Officer Mitchell used physical force to detain Ralph Harris, Jr. while he was on school property.  On at least two occasions, Officer Mitchell put Ralph Harris, Jr. into a chokehold.  The first occasion was in the lunchroom on an unspecified date.  The second occasion was when Ralph Harris, Jr. told a number of other students to stop harassing Sekiera Fitzpatrick.  The situation escalated, and Officer Mitchell came over to the intervene in the conflict.  Officer Mitchell grabbed Ralph Harris, Jr. and put him in a chokehold.  Officer Mitchell kept Ralph Harris, Jr. in a chokehold and dragged him, backwards, to the office.  Officer Mitchell did not do anything to the other boys involved in the argument.

   Another incident occurred in late 2002.  On this occasion, Ralph Harris, Jr. was involved in a fight at school with a white student.  Officer Mitchell responded to the altercation and physically restrained Ralph Harris, Jr.  According to Ralph Harris, Jr., whose account of the event we must credit at this stage in the proceeding, the white student was not restrained by Mitchell even though the white student instigated the fight.

### 3.    <u>August 7, 2002, City of Hobart Common Council Meeting</u>[1]

On August 7, 2002, the City of Hobart Common Council convened for a meeting.  Mayor Buzinec presided over the meeting, and Building Commissioner Lewis, along with several of Plaintiffs' neighbors, were also present.

During the council meeting, several of Plaintiffs' neighbors made complaints to the council about Plaintiffs.  In response, Mayor Buzinec promised that the complaints would be investigated and that she would bring Chief Snedecor and Building Commissioner Lewis to the neighbors' homes to discuss the matter further.

### 4.    <u>August 21, 2002 Incident</u>

On August 21, 2002, Robert Jemerson, Ralph Harris, Jr., Sekiera Fitzpatrick, and Nikieia Fitzpatrick were walking from their homes to a nearby Walgreens to buy school supplies.  The route that the children took to Walgreens did not have any sidewalks, so they had to walk on the street, keeping close to the curb as they did so.  As they were walking on the street, a City of Hobart squad car passing the children swerved and almost hit them.  The squad car turned around and pulled back up to the children.  Officers Mike Stewart and Scott Blake jumped out of the squad car and started questioning the children.

If one believes Plaintiffs (which, once again, we must at this stage of the proceedings), what happened next was more than a little disturbing. When the officers requested identification from the children, they were informed that the children did not have any identification.  The officers then told the children to sit on the curb and placed Robert and Ralph into handcuffs.

---

[1]While reference to the facts regarding the council meeting are absent from Plaintiffs' Response brief, the Court includes these facts in an abundance of caution, as these facts appear to be central to Plaintiffs' claims against Mayor Buzinec.

Once handcuffs were placed on Ralph and Robert, without any provocation, the officers began to assault the two boys. The officers kneed Ralph in his chest, choked him, hit him in his forehead, pushed his face into the ground, and kicked him several times. Robert received similar treatment from the officers, as he was kneed in his chest and kicked three to four times. Shortly after the assaults, Ralph and Robert were taken into police custody.

When Sandra Harris picked the boys up from the Hobart Police Department later that night, Ralph had a deep mark on his throat, a bruised chest, and dirt all over his face, and Robert had a swollen jaw and dirt on his face.

### 5.      August 30, 2002 Incident

On August 30, 2002, Ralph Harris, Jr. and Robert Jemerson were involved in a verbal altercation with a neighbor, Joseph Sullivan. A fight ensued, and the police were called. When the City of Hobart police arrived, Robert and Ralph were told to get on the ground. Even though Robert did as he was told, was on the ground in a prone position, and was otherwise totally compliant, Officer Paul Oliver nonetheless sprayed Robert with mace. The police ultimately arrested Robert, Ralph, and Mr. Sullivan for the disturbance.

### 6.      Actions Against John Hanna

John Hanna, who is white, owned two properties in Hobart, Indiana. Following the rental of his 522 Rush St. property to the Fitzpatrick family, Hanna received a Notice to Abate Nuisance regarding this property from the Building Department for the City of Hobart. In the Notice to Abate Nuisance, Hanna was ordered to "abate the ... nuisance [of] depreciating the value of the property of others." Hanna found the issuance of this notice very unusual because

the condition of his 522 Rush St. property was the same as the other homes in the neighborhood, none of which had received similar notices.

In September 2002, Hanna received a citation from the Building Department regarding his other property at 913 Georgiana. The Building Department found several code violations, including a "[failure to] clear all rubbish and debris from the crawl space beneath the house," a "[failure to] provide proper weather type cover at the entrance to the basement," and a "[failure to] provide proper (new) facia boarding on house exterior." Hanna's 913 Georgiana property was in similar condition to the other homes in the neighborhood, but none of these properties was cited for any violations.

## DISCUSSION

Plaintiffs have employed a shotgun approach to this matter, alleging virtually every imaginable claim under the sun. They have brought federal claims under Title VI, the Fair Housing Act, the Fifth Amendment, the Fourteenth Amendment, § 1981, § 1982, § 1983, § 1985(3), and § 1986. They have also brought supplemental state law claims under the Indiana Constitution and state tort claims such as malicious prosecution, abuse of process, assault and battery, negligent and intentional infliction of emotional distress, and false arrest. Defendants have moved for summary judgment on all claims.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment carries the initial burden of demonstrating an absence of evidence to support the position of the non-moving party. *Doe v.*

*R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994).  The non-moving party must then set forth *specific facts* showing there is a genuine issue of material fact and that the moving party is not entitled to judgment as a matter of law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  A genuine dispute about a material fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

In making this determination, the Court must draw every reasonable inference from the record in the light most favorable to the non-moving party.  *Haefling v. United Parcel Serv., Inc.*, 169 F.3d 494, 497 (7th Cir. 1999).  The non-moving party must support its contentions with admissible evidence and may not rest upon mere allegations in the pleadings or conclusory statements in affidavits.  *Celotex*, 477 U.S. at 324.  The plain language of Rule 56(c) mandates the entry of summary judgment against a party who fails to establish the existence of an element essential to its case and on which that party will bear the burden of proof at trial. However, "in reviewing a motion for summary judgment where each party's testimony relays a different version of the facts, [the court] must view those facts in the light most favorable to the party opposing the motion."  *Payne v. Pauley*, 337 F.3d 767 (7th Cir. 2003).

### A.   Waived Claims

Many of the claims brought by the Plaintiffs have been waived either affirmatively or through plaintiffs' failure to cite to record evidence.  We will address each of these two types of waivers in turn.  As an initial matter, we dispose of those claims that the Plaintiffs have affirmatively conceded have no merit.  In their Brief in Response to Summary Judgment, Plaintiffs concede that their claims brought under Title VI do not apply to the City Defendants.

9

(Pls.' Brief at 3.)  Plaintiffs also concede that John Hanna is the only plaintiff pursuing a state

law claim for malicious prosecution or abuse of process.   (Pls.' Brief at 13.)  Additionally,

Plaintiffs do not contest the City Defendants' request for summary disposition on the § 1983

conspiracy claim, the state law false arrest claim, and the assault and battery claims.  Summary

judgment is therefore granted on all of these claims, without further discussion.

There is a second type of waiver at play in this case. When a plaintiff makes only a

perfunctory argument and fails to cite any record evidence in support of a claim, summary

judgment can and should be granted.   *See Davis v. Carter*, 452 F.3d 686 (7th Cir. 2006)

(perfunctory arguments without proper cites to the record are deemed waived); *Ienco v.

Angarone*, 429 F.3d 680, 684 (7th Cir. 2005) (finding that plaintiff waived claims by failing to

develop them in response to defendant's motion for summary judgment); *E.E.O.C. v. U.S. Bell*,

2005 WL 1683979 (N.D.Ind. 2005) (issues raised in the motion for summary judgment that are

not properly responded to by the non-moving party are deemed waived).

The reasoning behind this second type of waiver is that plaintiffs must point the Court to

evidence that support their claims.  It is not up to the judge to scour the record to find the

evidence.  *Pourghoraishi v. Flying J., Inc.,* 449 F.3d 751, 754, n. 1 (7th Cir. 2006).  In this

regard, the Seventh Circuit has employed various metaphors and similes to describe the role of

district judges when reviewing summary judgments.  *See e.g. Corley v. Rosewood Care Center,

Inc.*, 388 F.3d 990, 1001 (7th Cir. 2004) (judges are not like pigs searching for truffles in

summary judgment records).  However one wants to describe it, the point is that judges do not

have to find evidence to support claims.  It is the litigants' responsibility to direct us to that

evidence.   Unfortunately, Plaintiffs have failed to do this.

Plaintiffs' argument under § 1981 provides a good example of what we are talking about. (*See* Pls.' Brief at 10.)  In their argument, Plaintiffs quote the text of § 1981and then give us a two-paragraph block quote from a Northern District of Illinois case that concludes that a police beating of a citizen that is racially motivated violates the "like punishment" and "equal benefits" clauses of section 1981.  *Mendez v. Rutherford*, 687 F.Supp. 412, 416 (N.D. Ill. 1988); *see* Pls.' Brief at 11.  That is probably true.  But *Mendez* was before the court on a motion to dismiss. This matter is before us on summary judgment. To survive a summary judgment motion, Plaintiffs need to offer us evidence, not allegations, that they were the victims of intentional discrimination. *See e.g. Majeske v. Fraternal Order of Police*, 94 F.3d 307, 312 (7th Cir. 1996) (to establish a claim under Section 1981, plaintiff must prove that he or she was the victim of intentional discrimination).  But Plaintiffs' brief on  § 1981 points us to *no* evidence, let alone evidence of intentional discrimination.  (*See* Pls.' Brief at 10-11.)

Plaintiffs' analysis of their § 1982 claim is similarly problematic.  (Pls.' Brief at 11.) There, too, the Plaintiffs quote the relevant part of the statute and then simply state that "because of extreme and outrageous acts of racial prejudice," the value of their lease had been diminished. To establish a claim under § 1982, the Plaintiffs must show that the interference with property rights was motivated by racial prejudice.  *Wilson v. McRae, Inc.*, 413 F.3d 692, 694 (7th Cir. 2005). But once again, Plaintiffs have failed to cite any evidence to support this claim, and we refuse to scour the record to find it for them.

The same can be said for Plaintiffs' claims under the Fifth and Fourteenth Amendment. (Pls. Brief at 6.)  All Plaintiffs say is that they have given the Court a "myriad" of examples that constitute "the worst kind of deprivation of liberty or property."   (Pls.' Brief at 6.)  But, yet

again, Plaintiffs have failed to cite in particular what that evidence is, and we will not sift

through a 77-page consolidated appendix consisting mostly of snippets of deposition testimony

to find it.  Plaintiffs' argument and citations to the record as they relate to the Fourteenth

Amendment are even more sketchy.  The Defendants argued that the Plaintiffs could not point to

similarly situated people outside of the protected class who were treated better than Plaintiffs.

Plaintiffs rejoinder was that the "evidence presented contradicts such claims."  (Pls.' Brief at 6.)

We need not belabor the point.  The same deficiency involving failure to cite to evidence

exists in the Plaintiffs' arguments under the Fair Housing Act (*see* Pls.' Brief at 7-8); their

arguments under § 1985(3) (Pls.' Brief at 8-9); those under § 1986 (Pls.' Brief at 9-10); and

those made under the common law theories of negligent and intentional infliction of emotional

distress (Pls.' Brief at 12-13).  In sum, a review of their brief shows that Plaintiffs provided this

Court with only perfunctory legal analysis and no cites to supporting record evidence.  Thus,

even though Plaintiffs gave the Court a comprehensive appendix containing various factual

assertions, they never articulated in their brief which of those facts applied to which claim. In

sum, because Plaintiffs' opposition to the motion for summary judgment contained only

perfunctory analysis on certain claims and few, if any, cites to supporting record evidence,

regrettably we find that Plaintiffs have waived these claims.[2]

**B.      Section 1983 Claims Against the Individual Police Officers**

42 U.S.C. § 1983 provides a federal cause of action against every person who, under

color of state law, deprives a citizen of his or her rights, privileges, or immunities secured by the

---

[2] As for Plaintiffs' claims under the Indiana Constitution, they must be dismissed because the Indiana Supreme Court recently held that there is no private right of action under the Indiana Constitution. *Cantrell v. Morris*, 849 N.E.2d 488 (Ind. 2006).

Constitution or the laws of the United States.  42 U.S.C. § 1983; *see also Starnes v. Capital Cities Media, Inc.*, 39 F.3d 1394 (7th Cir. 1994).  Section 1983 acts as a procedural instrument for vindicating federal rights originating elsewhere.  *Spiegel v. Rabinovitz*, 121 F.3d 251 (7th Cir. 1997).

The first step in a § 1983 analysis is to identify the specific constitutional right that was allegedly violated by the defendant.  *Kernats v. O'Sullivan*, 35 F.3d 1171 (7th Cir. 1994).  The validity of the claim must be judged by reference to the specific constitutional standard that governs that right.  *Spiegel*, 121 F.3d at 254.  The second step in a § 1983 analysis is to determine whether the plaintiff has shown that the constitutional deprivation was caused by persons acting under color of state law.  *Ienco v. City of Chicago*, 286 F.3d 994 (7th Cir. 2002).

In this case, the parties do not dispute that any of the Defendants were acting under the color of state law at the time of the alleged wrongs, so this Court need only address the validity of Plaintiffs' claim that their constitutional rights were violated.

### 1.      Illegal Seizure Claims

The Fourth Amendment provides that people have the right to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.  U.S. Const. amend. IV. However, the Fourth Amendment is not implicated unless Plaintiffs were, in fact, "seized." *Donovan v. City of Milwaukee*, 17 F.3d 944, 948 (7th Cir. 1994).  "[A] person has been seized within the meaning of the Fourth Amendment ... if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544 (1980).  The Fourth Amendment does not apply to

each and every "meeting" between the City Defendants and Plaintiffs, no matter how unpleasant or unsavory they might have been. *United States v. Mendenhall*, 446 U.S. 544 (1980).

Based on the evidence before this Court, it appears that the only seizures of Plaintiffs occurred in the course of the August 21, 2002, arrest, the August 30, 2002, arrest, and the three undated occasions when Ralph Harris, Jr. was put in a chokehold by Officer Mitchell while at school. (We address the incidents occurring at the school later in this opinion). Plaintiffs fail to identify, with reasonable particularity, any evidence that would tend to suggest that the other "meetings" between the City Defendants and Plaintiffs rose to the level of "seizures" within the meaning of the Fourth Amendment. *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989) (noting that the meeting of a police officer and citizen does not, in and of itself, amount to a "seizure" within the meaning of the Fourth Amendment).

Plaintiffs claim that the Fourth Amendment was violated when they were falsely arrested or detained by the individual police officers in this case. In order to prevail on their false arrest claims, Plaintiffs must prove that the officers arrested them without probable cause. *Florida v. Royer*, 460 U.S. 491 (1983). The existence of probable cause to arrest precludes a § 1983 suit for false arrest. *Morfin v. City of East Chicago*, 349 F.3d 989, 997 (7th Cir. 2003); *see also Ochana v. Flores*, 347 F.3d 266 (7th Cir. 2003) (same). "Probable cause is a commonsense determination, measured under a reasonableness standard." *Gower v. Vercler*, 377 F.3d 661, 668 (7th Cir. 2004). Probable cause exists if, at the time of an arrest, the facts and circumstances within the officer's knowledge and of which he has reasonably trustworthy information were sufficient to warrant a reasonable belief that the suspect had committed a crime. *Qian v. Kautz*, 168 F.3d 949 (7th Cir. 1999). This is an objective test, based upon the "factual and practical

considerations of everyday life on which reasonable [people], not legal technicians act." *Wollin v. Gondert*, 192 F.3d 616, 623 (7th Cir. 1999).

The testimony regarding the circumstances surrounding the August 21, 2002, arrest conflict. Plaintiffs' claim that the Fitzpatrick and Harris children were walking to the neighborhood Walgreens when a City of Hobart squad car almost hit them. Plaintiffs testified that they were forced to walk on the street, next to the curb, because the roadway did not have any adjacent sidewalks. Plaintiffs further testified that there were not any other vehicles on the street while they were walking. Under Indiana law, this is an acceptable practice. Ind. Code 9-21-17-13 ("if a sidewalk is not available, a pedestrian walking along and upon a highway shall walk only on a shoulder, as far as practicable from the edge of the roadway.")

After the City of Hobart squad car almost hit them, Plaintiffs testify that Defendants Mike Stewart and Scott Blake jumped out of the squad car and approached the children. Officers Stewart and Blake then demanded identification from the children, but the children responded that they did not have any identification. After this brief encounter, Robert Jemerson and Ralph Harris, Jr. were taken into custody and transported to the Hobart police department.

The Defendants contend that the children were not walking closely to the curb and were blocking vehicular traffic on the roadway in violation of Indiana law. Ind. Code 35-42-2-4(a); *see also* Ind. Code 9-21-17-12 (prohibiting a pedestrian from walking upon a roadway if a sidewalk is provided, and the use of the sidewalk is practicable). Furthermore, they contend that when Defendants Blake and Stewart asked the children for identification, Ralph Harris, Jr. and Robert Jemerson refused to identify themselves and subsequently resisted arrest. For this

reason, Defendants argue that the police officers had probable cause to initially stop the children and arrest Ralph Harris, Jr. and Robert Jemerson.

On the present record, the circumstances surrounding the initial stop and the subsequent interaction between Plaintiffs and the City of Hobart police officers are materially disputed. Taking the facts in a light most favorable to Plaintiffs, the facts demonstrate that Plaintiffs were walking near the curb on the street because there was no sidewalk in the area. At no time did the Plaintiffs block any pedestrian or vehicular traffic. Furthermore, the children did not refuse to identify themselves; instead, they simply informed the officers that they did not have any identification on them. These facts are all critical to the determination of the existence of probable cause. Because this Court cannot grant summary judgment when confronted with a genuine issue of material fact, Officer Blake's and Officer Stewart's motion for summary judgment with respect to the August 21, 2002, arrest must be denied. Thus, the claims of Ralph Harris, Jr.'s and Robert Jemerson that they were unlawfully seized on August 21, 2002, must be resolved by a jury.

However, summary judgment is granted to the individual police officers as to the claims brought by the other children who were present on this occasion. As explained by the Court in *Mendenhall*,

> a person is "seized" only when, by means of physical force or a show of authority, his freedom of movement is restrained. Only when such restraint is imposed is there any foundation whatever for invoking constitutional safeguards. ... As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification.

446 U.S. at 553-54.  Here, the record is devoid of any evidence suggesting that the police

officers, through use of force or show of authority, restrained either Sekiera's or Nikieia's

freedom of movement during the August 21, 2002, encounter.  Although Sekiera and Nikieia

Fitzpatrick were present for part of the August 21, 2002, encounter, they ran, unimpeded by the

police officers, to get Sandra Harris and other family members after Ralph Harris, Jr. and Robert

Jemerson were seized.   Because the police officers did not limit the girls' freedom of movement,

it is clear that the girls were not seized within the meaning of the Fourth Amendment.  As such,

summary judgment is granted to the individual police officers as to the claims brought by

Sekiera and Nikieia Fitzpatrick relating to August 21, 2002, encounter.

     With respect to the August 30, 2002, arrest, Plaintiffs concede that Officer Paul Oliver

had probable cause for the arrest.  (Plaintiffs' Resp. Brief at p. 4.)  Accordingly, this Court grants

summary judgment to all Defendants with respect to reasonableness of the arrest on that day.

**2.**     **Excessive Force Claims**

     "All claims that law enforcement officers have used excessive force ... in the course of an

arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth

Amendment 'reasonableness' standard," *Graham v. Connor*, 490 U.S. 386, 395 (1989),  as

excessive force claims invoke the Fourth Amendment prohibition against "unreasonable ...

seizures." *Henning v. O'Leary*, 2007 WL 487001 (7th Cir. Feb. 16, 2007); *see also Jacobs v.

City of Chicago*, 215 F.3d 758 (7th Cir. 2000) (Fourth Amendment prohibits the use of excessive

force during the execution of seizure).  An officer's use of force is excessive and

unconstitutional if a review of the totality of the circumstances at the time of the arrest (from the

perspective of a reasonable officer at the scene) demonstrates that the officer used greater force

17

than was reasonably necessary to make the arrest or seizure.  *Payne v. Pauley*, 337 F.3d 767, 778

(7th Cir. 2005).

 If an officer's actions were objectively reasonable in light of the totality of the

circumstances of the seizure (without the benefit of hindsight), from the perspective of a

reasonable officer, the officer's actions do not constitute excessive force.  *Graham*, 490 U.S. at

397.  Because Plaintiffs' claims of excessive force arise in the context of their arrests, this Court

evaluates the officers' use of force under the Fourth Amendment's reasonableness standard.

*Morfin*, 349 F.3d at 1004.  This analysis requires a balancing of the nature and quality of the

intrusion on the Plaintiffs' Fourth Amendment interests against the countervailing governmental

interests at stake.  *Graham,* 490 U.S. at 396.  This balancing test is largely based on the facts of

each case, such as the severity of the crime, the threat to safety posed by the situation, and

whether the plaintiff is attempting to evade or resist arrest.  *Id.*, *see also Payne v. Pauley*, 337

F.3d at 778.  Officers cannot shove, push or otherwise batter innocent citizens without sufficient

justification.  *Clash v. Beauty*, 77 F.3d 1045, 1048 (7th Cir. 1996).

 With regard to Plaintiffs' claims that Officers Stewart and Blake used excessive force

during the August 21, 2002, incident, this Court finds that there is a genuine issue of material

fact regarding the objective reasonableness of the officers' conduct.  According to Plaintiffs'

evidence, the officers handcuffed Ralph Harris, Jr. and Robert Jemerson for no reason and then

proceeded to kick, choke, and strike the children while they were in a defenseless position.

Taking all reasonable inferences in favor of Plaintiffs, the officers used unreasonable force when

arresting Ralph and Robert.  Accordingly, this Court denies the motion for summary judgment

with respect to Ralph Harris, Jr.'s and Robert Jemerson's § 1983 claim for excessive force against Officers Blake and Stewart in their individual capacities.

With regard to the claim that Officer Oliver used excessive force during the August 30, 2002, incident, the Court finds that there is a material factual dispute regarding the objective reasonableness of the officer's conduct.  According to Plaintiffs' evidence, the police put handcuffs on Robert Jemerson after a fight was broken up between Jemerson and his neighbor, Joseph Sullivan.  Despite the fact that he was in a defenseless position and not resisting arrest, Officer Oliver sprayed Robert Jemerson with mace.  Taking all reasonable inferences in favor of Plaintiffs, Officer Oliver used unreasonable force when arresting Robert.  Accordingly, this Court denies the motion for summary judgment with respect to Robert Jemerson's § 1983 claim for excessive force against Officer Oliver in his individual capacity for the incident on August 30, 2002.

### 3.      Illegal Seizure and Excessive Force Claims at the School

To evaluate the claims relating to what took place at the Hobart schools between the Plaintiffs and Officer Mitchell – the Hobart Police Officer assigned to the schools – we must determine the standard of review that applies to Officer Mitchell's conduct when he is at the school.  In making this determination, this Court must decide whether Officer Mitchell is entitled to a less stringent application of the protections under the Fourth Amendment for those incidents that occurred at school.

While students do not shed their constitutional rights at the door of the schoolhouse, the standards for searches or seizures at school are relaxed under the Fourth Amendment in order to account for the unique circumstances involved in the school setting.  *New Jersey v. T.L.O.*, 469

U.S. 325 (1985).  Under this relaxed standard, a court must balance the interests of the student

with the need for school officials to maintain order, such that any searches or seizures must

simply be reasonable under the circumstances.  *Id.* at 340.

Based on the scant evidence produced by the parties in the present case, it is unclear what

standard of review is applicable to the incidents that occurred at school.  The parties have not

provided this Court with evidence suggesting that Officer Mitchell was under the control or

direction of the City School of Hobart or that Officer Mitchell undertook investigations of

potential disciplinary infractions on school grounds solely at the request of school authorities.

*See, e.g., Wilson ex rel. Adams v. Cahokia School Dist. # 187*, 470 F. Supp.2d 897 (S.D. Ill.

2007) (indicating that factors such as who employed the resource officer, who controlled the

resource officer, and on whose behalf the officer was investigating are relevant for determining

whether school resource officer is entitled to relaxed Fourth Amendment standards).  Because

Officer Mitchell has not provided evidentiary support for his argument that his actions should be

viewed under the relaxed standard described by the Supreme Court in *T.L.O.*, his request for this

standard of review is denied.[3]

With respect to the seizures of Ralph Harris, Jr. while at school, the record reflects that

Officer Mitchell seized Ralph Harris, Jr. on several occasions, but on each of these occasions, it

was in response to altercations that he had been in with other students. According to the Ralph

_____

[3] *T.L.O.* involved a case where a school official searched the purse of a student after she
was caught smoking in a school bathroom.  It seems unlikely that the Supreme Court would
apply the same relaxed Fourth Amendment standard when the allegation is that school officials
are using excessive force against students.  In light of our finding that Mitchell was acting as a
police officer, not as a school administrator, when he dealt with the Plaintiffs, we need not
explore this issue any further.

Harris, Jr.'s version of the events, he never instigated the incidents, and the seizures by Officer

Mitchell were made for no apparent reason– *i.e.*, they were made without probable cause.  The

problem is that Officer Mitchell has not provided us any evidence to show why he seized Harris

on these occasions.  We have no deposition testimony from him, nor have we been provided an

affidavit. This has left us at sea as to exactly what occurred at the school on those occasions

when Harris was seized. In short, because this Court does not have sufficient facts to analyze the

reasonableness of the detention of Ralph Harris, Jr., the Motion for Summary Judgment is denied

as to Officer Mitchell in his individual capacity.

  Likewise, with regard to the claim that Officer Mitchell used excessive force during the

various school incidents, the Court finds that there is a material factual dispute regarding the

objective reasonableness of the officer's conduct.  According to Plaintiffs' evidence, Officer

Mitchell seized Ralph Harris, Jr. on several occasions.  In each of these encounters, Officer

Mitchell placed Ralph in a chokehold and dragged him down the hall to the principal's office.

Defendants fail to provide this Court with any evidence that Officer Mitchell's use of force was

necessary or appropriate for the situation, and Plaintiffs' evidence does not support the

conclusion that the Officer Mitchell's use of a chokehold on Ralph was reasonable under the

circumstances of the encounter.  Accordingly, this Court denies the motion for summary

judgment with respect to Ralph Harris, Jr.'s § 1983 claim against Officer Mitchell for excessive

force.

  While the Amended Complaint contains allegations that Officer Mitchell seized Robert

Jemerson on school property (Amended Complaint at ¶ 43(e)), no evidence has been presented

to this Court to support such a claim.  Therefore, summary judgment is granted to Officer

Mitchell with respect to any § 1983 claims brought by Robert Jemerson.

   **C.     Section 1983 Liability Claim Against Mayor Buzinec, Police Chief Snedecor,
            and Building Commissioner Lewis**

       In addition to their claims against the individual police officers, Plaintiffs bring § 1983

claims against Mayor Buzinec, Police Chief Snedecor, and Building Commissioner Lewis.

While Plaintiffs' briefing is silent on their actual theory of liability against these defendants, it

appears, based on a review of the Amended Complaint and the complete lack of any evidence

establishing direct involvement by these defendants, that Plaintiffs are attempting to establish

supervisory liability under § 1983.

       In *Monell v. Department of Social Services,* the United States Supreme Court expressly

rejected respondeat superior as a basis for establishing supervisory liability in a § 1983 action;

therefore, any finding of liability against Mayor Buzinec, Police Chief Snedecor, and Building

Commissioner Lewis must be premised on their personal involvement in the deprivation of the

Plaintiffs' constitutional rights.  436 U.S. 658, 691-92 (1978); *see also Payne v. Churchich*, 161

F.3d 1030, n. 15 (7th Cir. 1998).  A supervisor is not deemed to have personal involvement in a

subordinate's misconduct simply because he is negligent or grossly negligent in failing to

prevent misconduct, *Lanigan v. East Hazel Crest*, 110 F.3d 467, 477 (7th Cir. 1997); instead, a

supervisor is deemed to have the requisite personal involvement only if he knows about the

subordinate's misconduct and facilitates, approves, condones, or deliberately turns a blind eye to

it.  *Gossemeyer v. McDonald*, 128 F.3d 481, 495 (7th Cir. 1988).

       Not only do Plaintiffs barely mention Mayor Buzinec, Police Chief Snedecor, or Building

Commissioner Lewis in their Response brief, they fail to direct this Court to any evidence

suggesting that Mayor Buzinec, Police Chief Snedecor, or Building Commissioner Lewis observed, directed, ignored, approved, participated, or knew of any alleged misconduct directed against Plaintiffs.  The mere fact that Mayor Buzinec and Building Commissioner Lewis were present at city council meetings and promised to look into complaints about Plaintiffs is simply not sufficient to establish liability – supervisory or otherwise – against these defendants under § 1983.  For similar reasons, the mere fact that Police Chief Snedecor supervised the individual officers is not sufficient, without more, to establish liability under § 1983.  Accordingly, summary judgment is granted in favor of Mayor Buzinec, Police Chief Snedecor, and Building Commissioner Lewis, in their individual capacities, with respect to Plaintiffs' § 1983 claims.

### D.    Section 1983 Municipal Liability Claim Against City of Hobart

Plaintiffs assert that the City of Hobart is liable under § 1983 for the conduct of Mayor Buzinec, Police Chief Snedecor, Building Commissioner Lewis, and Officers John Mitchell, John Oliver, Scott Blake, and Mike Stewart.  Municipal liability under § 1983, though, "does not automatically spring from the acts of municipal employees[; instead,] municipalities are liable only for wrongs that they themselves cause." *Luck v. Rovenstine*,  168 F.3d 323, 325-26 (7th Cir. 1999).  In order to prevail on a § 1983 claim against a local governmental body, Plaintiffs must establish that action pursuant to a municipal policy or custom of the City of Hobart deprived them of a right, privilege, or immunity secured by the Constitution or federal law. *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658 (1978).  The courts have recognized three ways in which a municipality's policy can violate an individual's civil rights: "(1) an express policy, that when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to

23

constitute "custom or usage" with the force of law; (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Baxter by Baster v. Vigo County School Corp.*, 26 F.3d 728, 734-35 (7th Cir. 1994).  Additionally, a plaintiff must demonstrate the requisite causation, *i.e.*, the policy or custom was the 'moving force' behind the alleged constitutional deprivation.  *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002).  Plaintiffs cannot meet this standard.

First, Plaintiffs cannot establish, based on the record before this Court, that the City of Hobart has an express policy or widespread practice of endorsing or ignoring unconstitutional conduct.  Plaintiffs suggest that the misconduct of the individual police officers is tantamount to a widespread practice or custom; however, misconduct by individual municipal employees, without more, is simply not sufficient to establish a municipal custom or practice.  In order to establish the existence of a pervasive custom or widespread policy, Plaintiffs are required "to present facts showing that policymakers knew of the conduct or that the conduct was so widespread that they should have known."  *Billings v. Madison Metropolitan School Dist.*, 259 F.3d 807, 818 (7th Cir. 2001).  No such facts were presented to this Court, thereby barring any finding of a widespread policy or custom that would subject the City of Hobart to liability under § 1983.

Second, Plaintiffs cannot establish, based on the record before this Court, that any constitutional injuries were caused by a person with final policymaking authority for the City of Hobart.  Here, we are presented with two possible classes of policymakers for the City of Hobart: the individual police officers, on the one hand, and Mayor Buzinec, Building Commissioner Lewis, and Police Chief Snedecor, on the other hand.  The record evidence before

this Court, as well as commonsense, dictates that the individual police officers are not persons with final policymaking authority for the City of Hobart.  Accordingly, the acts of the individual officers cannot be attributed to the City of Hobart.  Furthermore, Plaintiffs' reliance on the involvement of Mayor Buzinec, Building Commissioner Lewis, and Police Chief Snedecor and their respective roles as policymakers for the City similarly fail.  Because we have already held that there is insufficient evidence in the record to hold these defendants personally liable for Plaintiffs' alleged constitutional deprivations, we must reach a similar conclusion with respect to any claimed violations by these individuals when acting as persons with final policymaking authority for the City of Hobart.  Simply put, none of the conduct of Mayor Buzinec, Building Commissioner Lewis, or Police Chief Snedecor creates liability for the City of Hobart.

This Court simply has no evidence before it that supports the conclusion that the City of Hobart, through some policy or custom, deprived Plaintiffs of any rights, privileges, or immunities secured by the Constitution or federal law.  Accordingly, the Court grants the City Defendants' Motion for Summary Judgment with respect to Plaintiffs' claims for municipal liability under § 1983.

### E.      Remaining Claims Brought By Plaintiff John Hanna

In response to the City Defendants' Motion for Summary Judgment, Plaintiff Hanna only presented this Court with arguments regarding two claims: his state law claim for malicious prosecution and his state law claim for abuse of process.  As such, any claims, other than those for malicious prosecution and abuse of process are deemed waived and this Court need not address them.[4]  *See, e.g., Ienco*, 429 F.3d at 684 (finding that plaintiff waived claims where he

---

[4]This Court could summarily dispose of Hanna's claims for malicious prosecution and abuse of process because Hanna failed to present any meaningful analysis or cites to record

failed to develop them in response to defendant's motion for summary judgment.)

Under Indiana law, claims for malicious prosecution and abuse of process are based on similar, yet separate, theories. A claim for malicious prosecution lies for maliciously causing process to issue, whereas a claim for abuse of process lies for the improper use of process after it has been issued. *Brown v. Robertson*, 92 N.E.2d 856 (Ind.App. 1950). The Court addresses each of these claims in turn.

### 1.     Malicious Prosecution Claim

A claim for malicious prosecution has four elements: (1) the defendant instituted or caused to be instituted a cause of action against the plaintiff; (2) the defendant acted with malice in doing so; (3) the defendant had no probable cause to institute the action; and (4) the original action was terminated in plaintiff's favor. *City of New Haven v. Reichhart*, 748 N.E.2d 374 (Ind. 2001). Malice may be inferred from a number of circumstances, including a defendant's failure to conduct a reasonable investigation or the existence of personal animosity between a defendant and a plaintiff. *F.W. Woolworth Co., Inc. v. Anderson*, 471 N.E.2d 1249, 1254 (Ind.Ct.App. 1984).

The City Defendants argue that even if Hanna can present sufficient evidence to establish a question of fact regarding the viability of his malicious prosecution claim (which this Court believes that he has done), Hanna's claim nonetheless fails because the City Defendants enjoy statutory immunity from this type of tort.

The City Defendants are covered by sovereign immunity unless liability is expressly

---

evidence in the response to the City Defendants' motion. However, the Court is inclined to address Hanna's claims on the merits because he did submit a detailed affidavit that provides this Court with sufficient detail of the support for his claims against the City Defendants.

allowed by statute.  While the Indiana Tort Claims Act ("ITCA") allows governmental liability for certain types of torts, the ITCA expressly precludes governmental liability for the tort of malicious prosecution.  The ITCA provides that: "A governmental entity or employee acting within the scope of his employment is not liable if a loss results from the following: ... (5) The initiation of a judicial or an administrative proceeding."  Ind. Code 34-13-3-3.

Here, it is uncontested that the individual City Defendants were all acting within the scope of their employment with the City of Hobart when the complained of proceedings against Hanna were initiated.  Because the ITCA expressly applies to claims arising from the alleged initiation of administrative proceedings, the City Defendants are immunized from claims of malicious prosecution stemming from their initiation of any judicial or administrative proceedings against John Hanna.

The City Defendants are therefore entitled to summary judgment in their favor with respect to Hanna's claim for malicious prosecution.

### 2.     <u>Abuse of Process Claim</u>

Hanna also asserts a claim for abuse of process against the City Defendants.  A claim for abuse of process has two elements: "(1) an ulterior purpose, and (2) a willful act in the use of the process not proper in the regular conduct of proceedings."  *Crosson v. Berry*, 829 N.E.2d 184 (Ind.Ct.App. 2005).  If the legal process has been used to accomplish an outcome that the process was designed to accomplish (*e.g.*, keeping homes in a state of repair), liability for abuse of process cannot be established.  *Watson v. Auto Advisors, Inc.*, 822 N.E.2d 1017 (Ind.Ct.App. 2005).

Similar to the claim for malicious prosecution, this Court need not address the merits of

Hanna's abuse of process claim because the ITCA immunizes the City Defendants from liability for this claim.  Although this Court has been unable to locate any published Indiana opinions regarding the application of the ITCA to an abuse of process claim, we conclude that the ITCA immunity applies with "equal force of logic to claims for malicious prosecution and abuse of process."  *Norris v. Bd. of Educ. Of Greenwood Comm. School Corp.*, 797 F. Supp. 1452 (S.D.Ind. 1992).  Hanna's claims all arise from the issuing of citations to Hanna and making him "appear, answer and defend himself simply because he rented to an African-American family," (Pls.' Resp., Doc. 68, at p. 13), so we believe that this falls within the scope of claims that the ITCA was intended to immunize.

The City Defendants are entitled to summary judgment in their favor with respect to Hanna's claim for abuse of process.

## CONCLUSION

For the foregoing reasons, the City Defendants' Motion for Summary Judgment [Doc. 45] is hereby **GRANTED, in part** and **DENIED, in part**.  The clerk shall **ENTER FINAL JUDGMENT** in favor of Defendants City of Hobart, Linda M. Buzinec, Brian Snedecor, and Carroll Lewis.  The claims brought by Ralph Harris, Jr. and Robert Jemerson under §1983 against Officers Blake, Stewart, Oliver and Mitchell in their individual capacities, as described more fully above, survive summary judgment and shall proceed to trial.

**SO ORDERED.**

ENTERED:  May 25, 2007

s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT